# IN THE EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| CHERITH EDWARDS and ETHAN HIBBS, | ) ) ) |
| Plaintiffs | ) ) Case No. _____ |
| v. | ) ) ) |
| TENNESSEE VALLEY FEDERAL CREDIT UNION, DONALD TINDELL, DONALD L. TINDELL, INC., and OBY BREWER, | ) ) ) ) ) |
| Defendants. | ) ) |

## **COMPLAINT**

Plaintiffs Cherith Edwards and Ethan Hibbs hereby file this Complaint against Defendants the Tennessee Valley Federal Credit Union, Donald Tindell, Donald Tindell, Inc., and Oby Brewer and state as follows:

1. Plaintiff Cherith Edwards is an individual residing in Chattanooga, Hamilton County, Tennessee.

2. Plaintiff Ethan Hibbs is an individual also residing in Chattanooga, Hamilton County, Tennessee. (Ms. Edwards and Mr. Hibbs will collectively be referred to as "Plaintiffs".)

3. Defendant Tennessee Valley Federal Credit Union ("TVFCU") is a federal credit union with its principal office located at 535 Chestnut Street, Chattanooga, TN 37402. TVFCU has branches located in Southeastern Tennessee and Northern Georgia.

4. Defendant Donald Tindell is an individual residing in Chattanooga, Hamilton County, Tennessee.

5. Defendant Donald L. Tindell, Inc. ("Tindall, Inc.") is a Tennessee corporation with its principal office located at 6257 E. Brainerd Road, Chattanooga, Tennessee 37421.

6. Defendant Oby Brewer is an individual residing in Chattanooga, Hamilton County, Tennessee.

7. This Court has subject matter jurisdiction under 28 U.S. Code § 1331 because it involves a federal question.

8. Venue is proper in that the acts complained of occurred within the confines of the jurisdiction of this Court.

**FACTUAL ALLEGATIONS**

9. Plaintiffs contracted to purchase a property at 2583 Highpoint Drive, Chattanooga, TN 37415 (the "Property").

10. In order to finance the purchase of the Property, the Plaintiffs applied to TVFCU for joint credit on October 18, 2022.

11. The Property's "type" was unique in nature, consisting of a traditional home with an "accessory dwelling unit" (an "ADU").

12. While the Property fell comfortably within the Fannie Mae/Freddie Mac Guidelines for a principal dwelling unit with an ADU, Ms. Edwards took the time to obtain TVFCU's "up front" approval of the specific property type.

13. TVFCU's approval was communicated to Ms. Edwards via Lee Cox, a Mortgage Loan Officer at TVFCU after Mr. Cox first obtained the necessary approvals for the property type within TVFCU from Eric Weekley, the Vice-President of Mortgage Lending at TVFCU.

14. Ms. Edwards supplied all required income and asset documentation needed to initiate the underwriting process.

15. On October 21, 2022, Ms. Edwards received processor confirmation from Emily Black confirming that the file had been sent to the TVFCU underwriter for review with an expected

24/48-hour typical turnaround time for initial file review.

16. Ms. Edwards sent several written notifications to TVFCU alerting them to the fact that no appraiser had contacted the Property's seller, Maria Chavez, to gain access to enter the pad-locked home, much less to conduct the appraisal inspection.

17. After several attempts to contact TVFCU, Ms. Edwards was informed by Mr. Cox that Mr. Weekley had elected to take over the file and was working directly with the appraiser.

18. On October 25, 2022, in connection with Ms. Edwards's loan application, the appraisers, Defendants Donald Tindell, Tindell, Inc., and Oby Brewer (collectively, the "Appraisers") submitted their appraisal report (the "Edwards Appraisal"). A copy of the Edwards Appraisal is attached as <u>Exhibit 1.</u>

19. The Edwards Appraisal falsely asserts that the Appraisers personally visited and inspected the Property on October 24, 2022, after which the Edwards Appraisal was prepared.

20. However, the Appraisers had not set foot on the Property since September 21, 2022 when they performed an appraisal of the same Property on behalf of Builtwell Bank in connection with a refinance of a loan for a Builtwell client, Ms. Chavez. The appraisal report submitted in connection with the September 21, 2022 appraisal is herein after referred to as the "Builtwell Appraisal" and is attached as <u>Exhibit 2.</u>

21. The Edwards Appraisal submitted on October 25, 2022 is an exact copy of the Builtwell Appraisal, the only exceptions being a different bank addressee, borrower name, effective date, and the addition of a fifth comparable property in the Edwards Appraisal which was only an active listing and not a closed comparable sale.

22. In addition, the fraudulent appraisal contains additional false certifications by Mr. Tindell stating that he had not appraised the Property in the three years prior to accepting the

3

assignment for TVFCU when he had literally appraised the same Property approximately a month earlier.

23. In other words, the Builtwell Appraisal had been fraudulently repurposed and submitted as part of TVFCU's loan application review.

24. As recorded in the Builtwell Appraisal, the Property was in the middle of a full renovation on September 21, 2022. At that time, the Property was fully gutted, unfit to be lived in, and in a state of total functional obsolescence. There was no kitchen, no means of food storage, no stove or means of cooking a meal, and no refrigerator. The home's appliances were sitting out in the yard. All of this was reflected in the Builtwell Appraisal.

25. The Edwards Appraisal falsely asserts that it is based on an inspection conducted by the Appraisers the day before, on October 24, 2022.

26. By that time, October 24, 2022, the active renovation project detailed in the Builtwell Appraisal was complete. None of the conditions noted in the Builtwell Appraisal remained. Furthermore, the home now boasted thousands of dollars of new improvements that had been completed since the Builtwell Appraisal's inspection date, including a brand-new custom kitchen with new high end appliances and new counter-tops.

27. Despite this reality, the Edwards Appraisal inexplicably described the Property in identical terms – i.e., fully gutted, unfit to be lived in, appliances strewn across the back yard, etc. The fraudulence of the report was revealed by the level of its inaccuracies.

28. If the Appraisers had even driven by the Property on October 24, 2022, let alone performed an actual appraisal, they would have instantly realized that the condition of the Property had drastically changed.

29. The fraudulence of the Edwards Appraisal is also revealed through an analysis

of the report's metadata, which proves that it is an exact copy of the Builtwell Appraisal. For example, the metadata for the Edwards Appraisal shows that the "effective" date for the Edwards Appraisal is the same effective date as the Builtwell Appraisal – i.e., September 21, 2022 – which is over one month before the Appraisers allegedly performed their inspection for the Edwards Appraisal on October 24, 2022. Further, the metadata proves that every photo contained in the Edwards Appraisal was sourced straight out of the Builtwell Appraisal.

30. In committing these acts, the Appraisers violated the Uniform Standards of Professional Appraisal Practice, specifically including these restrictions on appraisers in the Ethics Rules:

- Must not agree to perform an assignment that includes the reporting of predetermined opinions and conclusions;
- Must not communicate assignment results with the intent to mislead or to defraud;
- Must not knowingly permit an employee or other person to communicate a report or assignment results that are misleading are fraudulent;
- Must not perform an assignment in a grossly negligent manner.

31. Realizing the fraud that was being committed, Ms. Edwards secured for herself a copy of the Builtwell Appraisal and provided a copy of it to TVFCU. In addition to conveying the information to Mr. Weekley and Mr. Cox, Ms. Edwards also alerted Emily Cox, a loan processor at TVFCU, and Holly Graham, a Mortgage Assistant at TVFCU.

32. Unfortunately, TVFCU, instead of rectifying the fraud and protecting Plaintiffs' rights as a loan applicant, decided instead to deny the loan for insufficient collateral and property type.

5

33. Recognizing the predicament they found themselves in, Oby Brewer who was an appraiser with Tindell, Inc., contacted Ms. Chavez, admitted that he did not visit the Property on October 24, 2022, and then committed to making things right by going back to the Property to conduct a valid inspection and prepare a new, original appraisal report that reflected the total and complete renovation.

34. However, Mr. Weekley and Mr. Tindell brazenly decided not to have Mr. Brewer go back out to the Property and perform an actual fair market appraisal inspection.

35. Instead, Mr. Weekley and Mr. Tindell conspired to backdate the Edwards appraisal and then send it back to Ms. Edwards. Mr. Weekley and Mr. Tindell falsified the Edwards Appraisal's effective date as September 21, 2022, resulting in the Edwards Appraisal now predating both the purchase and sale agreement binding agreement date and Ms. Edwards's loan application with TVFCU. A copy of the backdated appraisal is attached as Exhibit 3.

36. In other words, Mr. Weekley and Mr. Tindell[1] had an opportunity to rectify the fraud, but they instead chose to double down.

37. Ms. Edwards informed Valerie Gifford and Todd Fortner, both at TVFCU, about the fraud being committed by and through the bank, especially Mr. Weekley. Ms. Gifford also elected to adopt the fraudulent appraisal and instructed Ms. Edwards to "just accept the decision and move on."

38. TVFCU also chose to expel Ms. Edwards's son, Ethan Hibbs, as a customer of TVFCU without explanation.

---

[1] Mr. Tindell had previously been sanctioned by the Tennessee Department of Commerce and Insurance related to an appraisal, but was still hired by TVFCU for the Edwards Appraisal.

6

39. Specifically, the TVFCU failed to identify any "for cause" reason for rejecting Mr. Hibbs, failed to explain whether there was a vote regarding the expulsion, and failed to give Mr. Hibbs a notice of a pending expulsion so that he could identify his rights regarding the same. The TVFCU's actions in this regard violate the bylaws of the National Credit Union Administration.

40. Because of Defendants' actions, the Plaintiffs were forced to close their loan with a different mortgage lender.

41. The undue delay resulted in Plaintiffs having to bring $18,733.70 more to closing and have cost Plaintiffs $108,459.31 in additional interest over the life of the loan.

## COUNT ONE: FRAUDULENT MISREPRESENTATION

42. Plaintiffs incorporate the above-referenced paragraphs as if fully restated.

43. The Appraisers intentionally misrepresented that they appraised the Property for Ms. Edwards's loan on October 25, 2022.

44. The Appraisers had not appraised the Property on October 25, 2022 and instead relied upon an appraisal done for Ms. Chavez on September 21, 2022.

45. Once the misrepresentation was brought to TVFCU's attention, rather than correct the fraud, TVFCU then colluded with the Appraisers to change the date on the Appraisal and continued to deny the loan.

46. Defendants' actions constitute fraud or fraudulent misrepresentation.

47. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs were injured in an amount to be proven at trial.

## COUNT TWO: NEGLIGENT MISREPRESENTATION

48. Plaintiffs incorporate the above-references paragraphs if restated herein.

49. TVFCU represented to Plaintiffs that it would have an honest appraisal performed

7

of the Property so as to fairly evaluate their loan for the purchase of the Property, which had been pre-approved.

50. The information provided by TVFCU was false because it hired the Appraisers, which had been previously sanctioned by the Tennessee Department of Commerce and Insurance for an appraisal, to use an old appraisal of the Property that contained false representations.

51. Plaintiffs reasonably relied upon TVFCU's representation to their financial detriment.

52. Moreover, the Appraisers supplied false information to the Plaintiffs in producing the Edwards Appraisal that falsely represented that the Property had been evaluated on October 22, 2023 when it had not.

53. The Defendants failed to exercise reasonable care in obtaining or communicating the information regarding the appraisal to the Plaintiffs.

54. The Defendants then worked together to further falsify the information on the Edwards Appraisal by back-dating it.

55. Defendants' actions at a minimum constitute negligent misrepresentation.

56. As a proximate result of Defendants' unlawful behavior, Plaintiffs have been harmed in an amount to be proven at trial.

### COUNT THREE: TENNESSEE CONSUMER PROTECTION ACT

57. Plaintiffs incorporate the above-referenced paragraphs as if restated herein.

58. Defendants' actions constitute a violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq. These violations include:

> (1) Falsely passing off goods or services as those of another;
>
> (2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. …;

8

(3) Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another. …;

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;

(6) Representing that goods are original or new if they are deteriorated, altered to the point of decreasing the value, reconditioned, reclaimed, used or secondhand.

(7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

Tenn. Code Ann. § 47-18-104.

59. As a proximate result of Defendants' violations of the Tennessee Consumer Protection Act, Plaintiffs were harmed in an amount to be proven at trial.

60. Defendants willfully and knowingly engaged in this unfair and deceptive behavior and, therefore, Plaintiffs are entitled to compensatory damages, treble damages, and attorney's fees pursuant to Tenn. Code Ann. § 47-18-109.

## COUNT FOUR: TRUTH IN LENDING ACT

61. Plaintiffs incorporate the above-referenced paragraphs as if restated herein.

62. Section 1639e of Chapter 15 of the U.S. Code provides that it shall be "unlawful, in extending credit or in providing any services for a consumer credit transaction secured by the principal dwelling of the consumer to engage in any act or practice that violates appraisal independence," including "mischaracterizing, or suborning any mischaracterization of, the appraised value of the property securing the extension of credit." 15 U.S. Code § 1639e(a)-(b)(2).

63. TVFCU violated this law by mischaracterizing or suborning the mischaracterization of the appraised value of the Property that would secure the loan for the purchase of the Property.

64. The statute also provides that "Any mortgage lender, mortgage broker, mortgage

9

banker, real estate broker, appraisal management company, employee of an appraisal management company or any other person involved in a real estate transaction involving an appraisal in connection with a consumer credit transaction secured by the principal dwelling of a consumer who has a reasonable basis to believe an appraiser is failing to comply with the Uniform Standards of Professional Appraisal Practice is violating applicable laws, or is otherwise engaging in unethical or unprofessional conduct, shall refer the matter to the applicable State appraiser certifying and licensing agency." 15 U.S. Code § 1639e(e).

65. Upon information and belief, TVFCU violated 15 U.S. Code § 1639e(e) by failing to refer this matter to the State appraiser certifying and licensing agency.

66. As a proximate result of TVFCU's unlawful actions, Plaintiffs were injured in an amount to be proven at trial.

67. Section 1640 of Chapter 15 of the U.S. Code provides a private right of action to an individual or a class for violation of these statutes to be awarded any actual damages and twice the amount of finance charges in connection with the transaction or, in the case of an individual action relating to a credit transaction not under an open-end credit plan that is secured by real property or a dwelling, to be awarded not less than $400 or greater than $4,000.

68. Accordingly, Plaintiffs are entitled to compensatory damages and $4,000 in additional damages.

### COUNT FIVE: THE EQUAL CREDIT OPPORTUNITY ACT

69. Plaintiffs incorporate the above-referenced paragraphs as if restated herein.

70. Under Regulation B of the Equal Credit Opportunity Act, TVFCU had a duty to Plaintiffs to "disclose any appraisal *developed* in connection with the application for credit." 12 CFR 1002.14 (emphasis added).

71. Here, TVFCU did not develop an appraisal in connection with the application for credit; instead, it simply regurgitated a previous appraisal for a different application and different applicant.

72. Section 1691e of Chapter 15 of the U.S. Code provides a private right of action to an individual or a class for violation of these statutes to be awarded any actual damages, punitive damages up to $10,000, costs, and attorney's fees.

73. Accordingly, Plaintiffs are entitled to compensatory damages, punitive damages, costs, and attorney's fees.

## COUNT SIX: NEGLIGENCE

74. Plaintiffs incorporate the above-referenced paragraphs as if restated herein.

75. The Appraisers had a duty to Plaintiffs to appraise the Property honestly and under the Uniform Standards of Professional Appraisal Practice.

76. TVFCU had a duty to honestly evaluate Plaintiffs' application for the loan on the Property, which had been pre-approved.

77. The Appraisers and TVFCU breached this duty to Plaintiffs by relying upon a falsified appraisal, which they blatantly and deceptively refused to remedy, to deny Plaintiffs' loan application.

78. Moreover, TVFCU had a duty to Mr. Hibbs to not expel him as a member without a vote and without explanation.

79. TVFCU breached this duty to Mr. Hibbs by expelling him as a member without a vote or explanation in retaliation for Ms. Edwards protesting the appraisal and denial of the loan.

80. The Defendants' acts constitute negligence that has proximately harmed Plaintiffs in an amount to be proven at trial.

## COUNT SEVEN: CONSPIRACY

81. Plaintiffs incorporate the above-referenced paragraphs as if restated herein.

82. The Appraisers and TVFCU engaged in a common design to use a false and fraudulent appraisal of the Property.

83. Even after knowing that the Edwards Appraisal was the result of fraud, TVFCU worked with the Appraisers, and specifically Mr. Tindell, to back date the Edwards Appraisal and relied upon it to deny the Plaintiffs' loan with TVFCU, proximately resulting in significant monetary harm to the Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE,** premises considered, Plaintiffs pray for relief and judgment against the Defendants as follows:

a. That Defendants be served with a copy of the Complaint and be required to answer within the time prescribed by law;

b. That Plaintiffs be awarded a judgment against the Defendants for compensatory damages;

c. That Plaintiffs be awarded punitive damages, treble damages and any other statutory damages against Defendants based upon their willful, knowing, intentional or reckless behavior;

d. That Plaintiffs be awarded their attorney's fees and costs expended in this lawsuit; and

e. That Plaintiffs be awarded any and all other relief to which they may be entitled.

Respectfully submitted,

**MCKELLAR LAW GROUP, PLLC**

/s/ Andrea Taylor McKellar
Andrea Taylor McKellar, BPR #019618
Pooja R. Bery, BPR #038652
117 28th Avenue North
Nashville, TN 37203
Telephone: 615.866.9699
Facsimile: 615.866.1278
andie@mckellarlawgroup.com
pooja@mckellarlawgroup.com