# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| CHERITH EDWARDS, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:23-cv-233 |
| | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | |
| TENNESSEE VALLEY FEDERAL | ) | Magistrate Judge Susan K. Lee |
| CREDIT UNION, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## MEMORANDUM OPINION

Before the Court are Defendants Tennessee Valley Federal Credit Union ("TVFCU"),

Donald Tindell, Inc., Donald Tindell, and Oby Brewer's motions to dismiss (Docs. 14, 15, 16).

For the following reasons, Defendants' motions (Docs. 14, 15, 16) will be **GRANTED IN**

**PART** and **DENIED IN PART**.

## I.    BACKGROUND

On October 16, 2022, Plaintiffs Cherith Edwards and Ethan Hibbs agreed to purchase a

property in Chattanooga, Tennessee ("the Property") from Maria Chavez. (Doc. 13, at 2; Doc.

14-1.)  The Property included a guest house and a main house. (Doc. 13, at 2.)  Less than a

month earlier, on September 21, 2022, Chavez had arranged for the Property to be appraised in

relation to obtaining financing from Builtwell Bank (the "Builtwell Appraisal"). (*Id.* at 2, 4.)

Tindell, Donald Tindell, Inc., and Oby Brewer (collectively, "Appraiser Defendants") prepared

the Builtwell Appraisal and assessed the Property's value to be $415,000.[1]  (Doc. 13-2, at 6.)

After considering the Builtwell Appraisal, as well as the value that they believed the recently

completed renovations had added, Plaintiffs and Chavez agreed on a purchase price of $441,000.

(Doc 13, at 2; Doc 14-1, at 1.)  The purchase agreement between Plaintiffs and Chavez was

contingent on the appraised value of the Property exceeding the purchase price.  (Doc. 14-1, at

3.)

To finance the purchase, Plaintiffs applied to Defendant TVFCU for joint credit on

October 18, 2022.  (Doc 13, at 2.)  TVFCU pre-approved Plaintiffs for the loan, and, on October

21, 2022, it confirmed that Plaintiffs' application was being processed and that the initial

evaluation would be complete in twenty-four to forty-eight hours.  (*Id.* at 3.)  TVFCU hired

Appraiser Defendants to appraise the Property.  (*Id.*; Doc. 13-1, at 2–3.)

On October 25, 2022, Appraiser Defendants submitted their appraisal to TVFCU (the

"Edwards Appraisal")[2] which in turn provided it to Plaintiffs.  (Doc. 13, at 3–4, 7; Doc. 13-1.)

Plaintiffs quickly realized it was virtually identical to the Builtwell Appraisal.[3]  (Doc. 13, at 8.)

Both appraisals contained the same photos of the Property, including photos of the main house's

interior.  (Doc. 13-1, at 20–26; Doc. 13-2, at 20–26.)  Both appraisals also concluded the

Property's value was $415,000.  (Doc. 13-1, at 6; Doc. 13-2, at 6.)  However, unlike the

Builtwell Appraisal, the Edwards Appraisal represented that it had been conducted "for

Tennessee Valley Federal Credit Union" and listed its "effective date" as October 24, 2022.

---

[1] Donald Tindell, Inc., employed Brewer.  (Doc. 13, at 4.)

[2] The Court uses the term "Edwards Appraisal" because that is how the parties refer to this
appraisal.

[3] The Edwards Appraisal contains an additional property comparison that the Builtwell Appraisal
does not contain.  (Doc. 13-1, at 16, 27–28.)  This is the only substantial difference between the
two.

(Doc. 13-1, at 3–4.) The Edwards Appraisal also represented that Appraiser Defendants had not appraised the property in the past three years. (*Id.* at 10.)

Plaintiffs, "[r]ealizing that fraud was being committed after receiving the Edwards Appraisal," alerted TVFCU that the Edwards Appraisal was nearly identical to the Builtwell Appraisal. (Doc. 13, at 7.) Brewer reached out to Plaintiffs, admitted he did not visit the Property when conducting the Edwards Appraisal, and offered to appraise the Property again. (*Id.*) TVFCU, however, did not request a new appraisal. (*Id.*) Instead, it asked that Appraiser Defendants change the date on the Edwards Appraisal to September 21, 2022—the date Appraiser Defendants inspected the Property for the Builtwell Appraisal. (*Id.*; Doc. 13-3, at 3–4.) TVFCU chose to rely on the Edwards Appraisal, which assessed the Property's value at $415,000, and denied Plaintiffs' loan based on "insufficient collateral and property type." (Doc. 13, at 7.) Plaintiffs objected to the decision, but TVFCU told them to "just accept the decision and move on." (*Id.* at 8.) Additionally, TVFCU expelled Hibbs as a member of TVFCU without explanation. (*Id.*)

As a result of not obtaining a home loan from TVFCU, Plaintiffs chose to close their loan with a different mortgage lender, Mortgage Investors Group ("MIG"). (*Id.*; Doc. 13-4.) The Property was appraised again on November 2, 2022 ("MIG Appraisal"), and its value was assessed to be $445,000. (Doc. 13-4, at 2, 5.) Plaintiffs allege that, by closing with a different lender, they incurred an additional $18,733.70 to close and will pay $108,459 in additional interest over the life of the loan. (Doc. 13, at 8.)

3

Plaintiffs filed the present action on October 6, 2023 (Doc. 1) and an amended complaint on January 9, 2024 (Doc. 13).[4]  Plaintiffs assert two causes of action against TVFCU arising from federal statutes:[5]

1. The Truth in Lending Act, 15 U.S.C. § 1639e *et seq.*; and
2. The Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*

(Doc. 13, at 11–13.)  Plaintiffs also assert five causes of action against all Defendants arising from Tennessee law:

1. The Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*;
2. Fraudulent Misrepresentation;
3. Negligent Misrepresentation;
4. Negligence; and
5. Conspiracy.

(Doc. 13, at 8–14.)  On January 23, 2024, each Defendant moved to dismiss Plaintiffs' amended complaint against them for failure to state a claim pursuant to Rule 12(b)(6).  (Docs. 14, 15, 16.)  Defendants' motions are now ripe.

## II.    STANDARD OF REVIEW

### A.    Rule 8(a)(2)

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[4] On April 22, 2024, Plaintiffs moved to amend their complaint a second time.  (Doc. 29.)  The Court denied the motion.  (Doc. 34.)

[5] Plaintiffs do not allege that Appraiser Defendants violated either federal statute.  (*See* Doc. 18, at 18–19 ("This cause of action, even in the FAC, was not asserted against [Brewer], nor against the Tindell Defendants.").)

Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"Generally, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018

5

WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018) (citing Fed. R. Civ. P. 12(d)). However, "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10. Furthermore, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

### B.      Rule 9(b)

Rule 9(b) applies in cases in which a plaintiff alleges fraud requires that "a party [] state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). "To plead fraud with particularity, the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (internal quotations and citation omitted). The purposes of Rule 9(b) are to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc., 838 F.3d 750, 771 (6th Cir. 2016). While this is a high bar, "so long as a [plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

The Sixth Circuit has emphasized that, "Rule 9(b) should be interpreted in harmony with Rule 8's statement that a complaint must only provide a short and plain statement of the claim."

*Id.* at 503 (quoting Fed. R. Civ. P. 8(a)). It has also cautioned that "[Rule 9(b) should not be read to defeat the general policy of simplicity and flexibility in pleadings contemplated by the Federal Rules." *Id.*; *see U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) ("*Bledsoe* II") ("When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading"). Therefore, "[a]lthough conjecture and speculation are insufficient under Rule 9(b), [a court] must construe the complaint in the light most favorable to the plaintiff [and] accept all factual allegations as true." *Prather*, 838 F.3d at 771 (citations omitted).

## III. ANALYSIS

### A. Truth in Lending Act

Plaintiffs allege that TVFCU violated the Truth in Lending Act ("TILA") in two ways: (1) by asking Appraiser Defendants to change the date on the Edwards Appraisal; and (2) by failing to report Appraiser Defendants' conduct to the state appraiser certifying-and-licensing agency. (Doc. 13, at 11–12.)

TILA provides in relevant part that "[i]t shall be unlawful, in extending credit or in providing any services for a consumer credit transaction secured by the principal dwelling of the consumer, to engage in any act or practice that violates appraisal independence." 15 U.S.C. § 1639e(a). According to TILA, "suborning any mischaracterization of [] *the appraised value* of the property securing the extension of the credit" violates appraisal independence. *Id.* § 1639e(b)(2) (emphasis added). TILA explicitly provides that this provision "shall not be construed as prohibiting a mortgage lender . . . from . . . correct[ing] errors in the appraisal report." *Id.* § 1639e(c). TILA also requires that "[a]ny mortgage lender . . . who has a reasonable basis to believe an appraiser is failing to comply with the Uniform Standards of

Professional Appraisal Practice, is violating applicable laws, or is otherwise engaging in unethical or unprofessional conduct, shall refer the matter to the applicable State appraiser certifying and licensing agency." *Id.* § 1639e(e).

In addition to establishing a private cause of action, TILA provides for statutory damages. *Id.* § 1640(a)(2)(A)(iv). In the case of a violation of TILA in the context of a mortgage transaction, it sets these damages at "not less than $400 or greater than $4,000." *Id.* The Sixth Circuit has explained that, under TILA's statutory scheme, "once the court finds a violation [of TILA], no matter how technical, it has no discretion with respect to the imposition of liability." *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 801 (6th Cir. 1996). Therefore, even if a plaintiff's injuries were not actually caused by a defendant's violation of TILA, she still has a valid claim and can recover statutory damages. *Id.* at 800–02.

Here, Plaintiffs argue that TVFCU "suborn[ed] the mischaracterization of the appraised value of the Property" by requesting that Appraiser Defendants change the date of the Edwards Appraisal to reflect when the inspection was conducted. (Doc. 13, at 11 (citing 15 U.S.C. § 1639e(b)(2).) This argument fails for two reasons. First, while TILA makes it unlawful for a lender to request that the appraiser mischaracterize the "appraised value" of a property, 15 U.S.C. § 1639e(b)(2), Plaintiffs do not allege that TVFCU requested that Appraiser Defendants change the appraised value; it only asked that the appraisal's date be changed. (Doc. 13, at 7.) Requesting a change unrelated to the "appraised value" of the Property does not violate TILA's

appraiser-independence requirements.[6] [7] *Id.* Second, TILA expressly provides that it is not unlawful for a lender to "correct errors in the appraisal report." *Id.* § 1639e(c). Plaintiffs allege that TVFCU did just this: it requested that Appraiser Defendants change the date to reflect when the inspection was actually conducted. Indeed, such a correction is central to Plaintiffs' case; they allege that the Edwards Appraisal was in fact prepared on September 21, 2022, and the October 22, 2022 date was incorrect. (*See* Doc. 13, at 4.) Changing the date to reflect this fact falls squarely within TILA's error-correction exception.

Plaintiffs next argue that TVCFU violated TILA by failing to report Appraiser Defendants' violations of the Uniform Standards of Professional Appraisal Practice ("USPAP") to state officials. (Doc. 13, at 12.) The USPAP requires, among other things, that an appraiser "disclose to the client . . . any services regarding the subject property performed by the appraiser . . . within the three-year period immediately preceding the agreement to [appraise the property]." Appraisal Foundation, *Uniform Standards of Professional Appraisal Practice*, 7 (2020-2021 ed.). It also requires a signed certification that the appraiser has not performed an appraisal on the property in the previous three years. *Id.* at 23–24.

Plaintiffs have alleged facts that plausibly suggest that TVFCU was aware that Appraiser Defendants violated these USPAP standards. The Edwards Appraisal falsely certified that

---

[6] Plaintiffs argue that "TVFCU suborned the mischaracterization of the appraised value of the property *by using an appraisal that was conducted for a completely different bank, at a completely different time, and for a completely different borrower for a different purpose (a refinance)*." (Doc. 18, at 17 (emphasis in original).) Plaintiffs do not elaborate on their argument. (*See id.*)

[7] Plaintiffs do claim that the Property increased in value between September 21 and October 22. (Doc. 13, at 5.) Even so, if anything, the date change corrected a mischaracterization rather than creating one. The Property was inarguably valued at $415,000 on September 21, 2022. (*See* Doc. 13-2, at 6.) After the date change, this is the exact amount the Edwards Appraisal valued the property at.

Appraiser Defendants had not previously appraised the Property in the preceding three years (*see* Doc. 13-1, at 5, 8, 32) when they had appraised it barely a month prior (*see* Doc. 13-2). Furthermore, TVCFU should have known that this representation was false because Plaintiffs provided it with a copy of the Builtwell Appraisal. (Doc. 13, at 7.) TILA required TVFCU to report Appraiser Defendants, as this certification may have provided TVFCU a reasonable basis to believe they had violated USPAP standards and engaged in unethical and unprofessional conduct. 15 U.S.C. § 1639e(e). It is unclear how Plaintiffs attribute causation of their actual damages to this failure to report. But their TILA claim nevertheless survives because the statute provides for statutory damages. *Id.* § 1640(a)(2)(A)(iv).

In sum, Plaintiffs have not alleged that TVFCU suborned the mischaracterization of the appraised value of the Property and fail to state a claim on that basis. However, Plaintiffs have adequately alleged that TVFCU violated TILA by failing to report Appraiser Defendants for violating USPAP standards and may be entitled to statutory damages.

### B.    Equal Credit Opportunity Act

Plaintiffs allege that TVFCU violated the Equal Credit Opportunity Act ("ECOA") because it "did not develop an appraisal in connection with [Plaintiffs'] application for credit." (Doc. 13, at 12–13.)

ECOA provides in relevant part that "[e]ach creditor shall furnish to an applicant a copy of any and all written appraisals and valuations developed in connection with the applicant's application for a loan." 15 U.S.C. § 1691(e)(1). But there is no statutory requirement that a creditor or mortgage lender develop an appraisal in the first place when considering a loan application. *See generally id.* Similarly, the regulations implementing ECOA do not require a lender to develop an appraisal but rather explain the proper disclosure process in greater detail.

*See* 12 C.F.R. § 1002.14.

Plaintiffs appear to argue that the duty to disclose appraisals developed in connection with a loan application, by implication, imposes a duty on a lender to develop such an appraisal. But neither the statute itself nor regulations implementing the statute requires the creation of an appraisal. 15 U.S.C. § 1691(e)(1); 12 C.F.R. § 1002.14. Plaintiffs also cite no case law that interprets ECOA to require a lender to develop an appraisal. (*See generally*, Docs. 13, 18.) This lack of an appraisal requirement should come as no surprise in a consumer-protection statute like ECOA because an appraisal benefits the lender by ensuring there is sufficient collateral for the loan. *See Decatur Ventures, LLC v. Daniel*, 485 F.3d 387, 390 (7th Cir. 2007) ("Lenders require appraisals to protect themselves from the people who are tempted to misrepresent the value of security in order to get their hands on more money."). If a creditor chooses to proceed without an assessment of a property's value, that creditor bears the risk that it has issued an insufficiently collateralized loan.

Plaintiffs do not state a claim under ECOA, because ECOA only requires a lender to disclose any appraisals developed. (*See* 15 U.S.C. § 1691(e)(1)). ECOA does not require the creation of an appraisal, and Plaintiffs do not allege that TVFCU failed to disclose any appraisal.

### C. Tennessee Consumer Protection Act

Plaintiffs also assert that Defendants violated six separate provisions of the Tennessee Consumer Protection Act ("TCPA"). (Doc. 13, at 10–11.)

The TCPA provides a private right of action for any person who suffers a financial loss because of another's "unfair or deceptive act or practice" as defined by the statute. Tenn. Code Ann. § 47–18–109(a)(1). To establish a prima facie case, the plaintiff must adequately allege that: (1) a defendant engaged in an unfair or deceptive practice; and (2) "[the] plaintiff suffered

11

a loss of money, property, or a thing of value as a result." *Rhodes v. Bombardier Cap. Inc.*, No. 3:09–CV–562, 2010 WL 3861074, at *2 (E.D. Tenn. Sept. 24, 2010) (citing Tenn. Code Ann. § 47–18–109). The TCPA further provides that the statute "shall be construed liberally" in order to "protect consumers . . . from those who engage in unfair or deceptive acts" and to "provide for civil legal means for maintaining ethical standards of dealing." Tenn. Code Ann. § 47-18-102; *see Fayne v. Vincent*, 301 S.W.3d 162, 172 (Tenn. 2009) ("The [TCPA] is to be liberally construed in order to enable it to protect the consumer and to promote the other policies which motivated its passage.").

The TCPA enumerates a total of sixty-two "unfair or deceptive acts." Tenn. Code Ann. § 47-18-104(b). These practices include in relevant part:

1. Falsely passing off goods or services as those of another;
2. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
3. Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;
   . . .
5. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ;
6. Representing that goods are original or new if they are deteriorated, altered to the point of decreasing the value, reconditioned, reclaimed, used or secondhand; [and]
7. Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

*Id.* Furthermore, because claims under the TCPA are claims of fraud, a plaintiff must meet the heightened pleading standard of Rule 9(b). *See Metro. Prop. & Cas. Ins. Co. v. Bell*, No. 04-5965, 2005 WL 1993446 at *5 (6th Cir. Aug. 17, 2005); *Sony/ATV Music Pub. LLC v. D.J. Miller Music Distrib., Inc.*, No. 3:09-CV-01098, 2011 WL 4729811, at *9 (M.D. Tenn. Oct. 7, 2011) ("Courts have consistently held that claims brought pursuant to the TCPA must satisfy a heightened pleading standard.").

In this case, it is unclear whether Plaintiffs bring their TCPA claim against TVFCU. Plaintiffs assert that "Defendants' actions constitute a violation of the Tennessee Consumer Protection Act," but, in their briefing, Plaintiffs point only to actions taken by Appraiser Defendants. (Doc. 18, at 15–16.) Plaintiffs fail to identify any action TVFCU took that would violate TCPA, and the Court cannot independently discern such an action. (*See id.*)

The Court's struggle to identify the basis for such a claim against TVFCU arises from Plaintiffs' failure to meet the heightened pleading standard of Rule 9(b). *See Prather*, 838 F.3d at 771 (noting that one of the purposes of Rule 9(b) is to "alert[] defendants to the precise misconduct with which they are charged . . ."). In fact, even under the more relaxed standard of Rule 8(a) Plaintiffs fail to state a TCPA claim. Plaintiffs allege only that TVFCU used an old appraisal to determine whether to give Plaintiffs a loan. (*See* Doc. 13, at 7–8.) Plaintiffs do not allege that TVFCU tried to make Plaintiffs believe that the Edwards Appraisal was conducted on October 24, 2022. (*See id.*) Instead, Plaintiffs allege that TVFCU went out of its way to correct the date of the Edwards Appraisal once Plaintiffs brought the issue to its attention. (*Id.* at 7.) Plaintiffs therefore fail to state a claim against TVFCU.

Plaintiffs allege that Appraiser Defendants engaged in all six unlawful practices listed above by falsely representing that the Edwards Appraisal was a new appraisal conducted on October 24, 2022, when it was really a copy of the Builtwell Appraisal created a month prior. (Doc. 18, at 15–16.) Plaintiffs have adequately alleged that Appraiser Defendants engaged in several unfair practices prohibited by the TCPA. Specifically, Plaintiffs have adequately alleged that Appraiser Defendants falsely represented that the Edwards Appraisal was a new appraisal when it was in fact a copy of the previously conducted Builtwell Appraisal. *See* Tenn. Code Ann. §§ 47-18-104(b)(5–7) (defining a deceptive practice as "[r]epresenting that goods or

services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" and "[r]epresenting that goods are original or new if they are deteriorated, altered to the point of decreasing the value, reconditioned, reclaimed, used or secondhand").

However, Plaintiffs fail to state a claim against Appraiser Defendants under Tennessee Code Annotated §§ 47-18-104(b)(1–3). Plaintiffs have not alleged facts showing that Appraiser Defendants "[f]alsely pass[ed] off goods or services as those of another." *Id.* § 47-18-104(b)(1). Plaintiffs do not allege that Appraiser Defendants attempted to pass off the Edwards Appraisal as the work of anyone other than themselves. Nor do Plaintiffs allege facts which show that Appraiser Defendants caused a "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services." *Id.* § 47-18-104(b)(2). Again, the Edwards Appraisal was only certified as the work of Appraiser Defendants—no one else. (*See* Doc. 13-1.) For the same reason, Plaintiffs do not allege facts which show that Appraiser Defendants created a "likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another" as to the Edwards Appraisal. *Id.* § 47-18-104(b)(2).

Defendant Brewer argues that Appraiser Defendants cannot be liable to Plaintiffs under the TCPA, because Plaintiffs are not "consumers." (Doc. 16, at 11–12.) The TCPA broadly defines "consumer" as "any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services . . . or thing of value . . ." Tenn. Code Ann. § 47–18–103(6). Plaintiffs qualify as "consumers" under this broad definition. Plaintiffs sought to acquire the services of Appraiser Defendants through their dealings with TVFCU, which they knew would require an appraisal. (*See* Doc. 14-1, at 3 (purchase agreement contingent on appraised value of the home equaling the purchase price).) Given that courts must

14

construe the TCPA broadly, qualifies Plaintiffs as consumers. *See Fayne*, 301 S.W.3d at 172 ("The [TCPA] is to be liberally construed in order to enable it to protect the consumer and to promote the other policies which motivated its passage.").

Moreover, the TCPA states that, "any *person* . . . may bring an action individually to recover damages." Tenn. Code. Ann. § 47-18-109(a)(1) (emphasis added). Both the Tennessee Supreme Court and the Sixth Circuit have interpreted this language to mean that a person does not have to necessarily be a "consumer" to sue under the TCPA. *See Taylor v. Thomas*, 624 F. App'x 322, at 327 (6th Cir. 2015) (noting that "a 'person' need not be a consumer to sue under the [TCPA]"); *ATS Se., Inc. v. Carrier Corp.*, 18 S.W.3d 626, 626 (Tenn. 2000) ("[I]t is irrelevant whether a [plaintiff] is a 'consumer' under the Act because the right of action is given to 'person[s],' a term that [the Act] specifically defined . . ."). Most other courts considering the TCPA have agreed. *See Masters Ent. Grp., Inc. v. Aurich*, No. 3:18-CV-1314, 2020 WL 13617690, at *5 (M.D. Tenn. Aug. 25, 2020) (collecting cases).

While some courts have held that a person must also qualify as a "consumer" to sue under the TCPA, these cases are largely limited to situations in which the plaintiff was a seller attempting to use the TCPA to sue potential buyers. *See Wagner v. Fleming*, 139 S.W.3d 295, 301 (Tenn. Ct. App. 2004) (finding that a plaintiff was not protected under the TCPA, because "the plaintiff was acting as a seller because he was offering real estate for sale"); *Hood Land Tr. v. Hastings*, No. M200902625COAR3CV, 2010 WL 3928647, at *10 (Tenn. Ct. App. Oct. 5, 2010) ("We do not, however, find any support for the interpretation of the plaintiff that, as a prospective seller, it has a cause of action under the TCPA"); *Withco, LLC v. Republic Servs. of Tenn., LLC*, No. 3:09-1207, 2011 WL 1099905, at *5 (M.D. Tenn. Mar. 23, 2011) (granting the

defendants' motion to dismiss because the plaintiffs "were sellers of services . . . rather than consumers"). That is not the scenario in this case.

Accordingly, Plaintiffs have failed to state a claim against TVFCU. However, Plaintiffs have adequately alleged that Appraiser Defendants have violated the TCPA by repurposing the Builtwell Appraisal as the Edwards Appraisal.

### D. Fraudulent Misrepresentation

Plaintiffs next assert fraudulent-misrepresentation claims against TVFCU and Appraiser Defendants. (Doc. 13, at 9.) Plaintiffs claim that TVFCU fraudulently represented "that it would obtain a valid and appropriate appraisal for the Property in order to evaluate and approve of the Plaintiffs' application for a loan." (*Id.*; Doc. 18, at 8.) Plaintiffs claim that Appraiser Defendants fraudulently represented that they appraised the property on October 24, 2022. (Doc. 13, at 9.)

> Under Tennessee law, the elements of a fraudulent misrepresentation claim are:
>
> (1) an intentional misrepresentation of material fact;
>
> (2) the misrepresentation was made "knowingly," "without belief in its truth," or "recklessly without regard to its truth or falsity";
>
> (3) the plaintiff reasonably relied on the misrepresentation and suffered damages; and
>
> (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must 'embody a promise of future action without the present intention to carry out the promise.

*Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). Claims of fraudulent misrepresentation must satisfy the heightened pleading standard of Rule 9(b). *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993).

Here, Plaintiffs fail to state a claim for fraudulent misrepresentation against TVFCU or Appraiser Defendants. Plaintiffs allege that TVFCU fraudulently promised "that it would obtain

a valid and appropriate appraisal for the Property in order to evaluate and approve of the Plaintiffs' application for a loan." (Doc. 13, at 9; Doc. 18, at 8.) However, Plaintiffs do not provide the "the time, place, and content of the alleged misrepresentation." *Chesbrough*, 655 F.3d at 467. Plaintiffs do not allege which TVFCU employee told them this, when this representation was made, or what precisely was said. (*See generally*, Doc. 13.) Simply claiming that an unspecified person, at an unspecified time, made a vague representation that the appraisal would be "appropriate" is not enough to meet the Rule 9(b) heightened pleading standard. *See Prather*, 838 F.3d at 771 (noting that the purposes of Rule 9(b) are to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior."). Plaintiffs therefore fail to state a claim against TVFCU.[8]

Plaintiffs claim against Appraiser Defendants also fails because Plaintiff did not rely on Appraiser Defendant's representation. Plaintiffs allege that Appraiser Defendants fraudulently represented in the Edwards Appraisal that they appraised the Property on October 24, 2022. (Doc. 13, at 9; Doc. 13-1, at 4.) However, Plaintiffs claim that they instantly recognized that the

---

[8] Plaintiffs also fail to state a claim against TVFCU under Rule 8(a). "A promise of future action" can only support a claim of fraudulent misrepresentation if a plaintiff alleges facts plausibly suggesting that a defendant did not have "the present intention to carry out the promise" when it was made. *Power & Tel. Supply Co.*, 447 F.3d at 931.

Here, Plaintiffs do not allege facts which plausibly show that TVFCU did not intend to obtain a new appraisal when it began the process of evaluating Plaintiffs' loan application. Plaintiffs have, at most, alleged that TVFCU made a promise and did not follow through. This is not sufficient to plead fraudulent misrepresentation. *See AVE Greeneville, LLC v. First Cmty. Bank of E. Tenn.*, No. 2:23-CV-22, 2024 WL 1345708, at *4 (E.D. Tenn. Mar. 28, 2024) ("[T]o make out a promissory fraud claim, it is not sufficient to allege someone made a promise but did not follow through.'") (quoting *Burgess v. Bluegreen Vacations Unlimited, Inc.*, No. 3:18-cv-119, 2019 U.S. Dist. LEXIS 237637, at *37 (E.D. Tenn. Mar. 27, 2019); *Am. Cable Corp. v. ACI Mgmt., Inc.*, No. M199700280C0AR3CV, 2000 WL 1291265, at *5 (Tenn. Ct. App. Sept. 14, 2000) ("Failure to perform a promise, standing alone, is not competent evidence that the promisor never intended to perform.") (citation omitted).

Edwards Appraisal was a copy of the Builtwell Appraisal and knew that it had not been conducted on October 24, 2024. (*See* Doc. 13, at 7 (noting that Plaintiffs "[r]ealiz[ed] that fraud [ ] was being committed after receiving the Edwards Appraisal . . . ").) Such a statement shows that Plaintiff did not rely on any misrepresentation. *See Coffey*, 2 F.3d at 162 ("Where the plaintiff has actual knowledge . . . that the representation is false, an action for fraud will not lie.") (quoting *Pusser v. Gordon*, 684 S.W.2d 639, 642 (Tenn.App.1984)); *Farley*, 928 S.W.2d at 933 ("Since [Plaintiff] was not deceived by any of the defendants, he cannot sue them for fraud and deceit."). Because Plaintiffs did not detrimentally rely on this representation, they fail to state a claim against Appraiser Defendants.

### E.      Negligent Misrepresentation

Plaintiffs next assert claims against both TVFCU and Appraiser Defendants for negligent misrepresentation. (Doc. 13, at 9.) Plaintiffs claim TVFCU negligently represented "that it would obtain a valid and appropriate appraisal for the Property in order to evaluate and approve of the Plaintiffs' application for a loan." (*Id.*) Plaintiffs claim that Appraiser Defendants "failed to exercise reasonable care in obtaining or communicating the information regarding the appraisal to the Plaintiffs" by stating that they appraised the property on October 24, 2022. (*Id.*)

Under Tennessee law, the elements of negligent misrepresentation are:

(1) the defendant supplied information to the plaintiff;

(2) the information was false;

(3) the defendant did not exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relied on the information.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). A plaintiff alleging negligent misrepresentation must satisfy Rule 9(b)'s heightened pleading standard. *See AVE Greeneville, LLC*, 2024 WL 1345708, at *3 ("Claims of negligent misrepresentation are

governed by Federal Rule of Civil Procedure 9(b)."); *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014) (noting that negligent misrepresentation claims must meet Rule 9(b)'s heightened pleading standard).

Here, for the reasons explained above, Plaintiffs have not pled their claim against TVFCU with the specificity required by Rule 9(b). As also noted above, Plaintiffs do not allege that they relied on Appraiser Defendants' representation, and, therefore, fail to state a claim against Appraiser Defendants under Rule 8(a). (Doc. 13, at 7.)

### F. Negligence

Plaintiffs also assert a claim for negligence against TVFCU and Appraiser Defendants. (Doc. 13, at 13.) Plaintiffs assert that TVFCU was negligent in two respects: (1) it breached its duty "to honestly evaluate Plaintiffs' application for the loan on the Property"; and (2) it "expel[led] [Hibbs] without a vote and without explanation." (*Id.*) Plaintiffs claim that Appraiser Defendants were negligent in failing "to appraise the Property honestly and under the Uniform Standards of Professional Appraisal Practice." (*Id.*)

Under Tennessee law, the elements of negligence are:

(1) a duty of care owed by the defendant to the plaintiff;

(2) conduct falling below the applicable standard of care amounting to a breach of that duty;

(3) an injury or loss;

(4) causation in fact; and

(5) proximate, or legal, cause.

*King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013). Duty is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008). Whether a duty of care exists is a question of law, *Hale v. Ostrow*, 166 S.W.3d 713, 716

(Tenn. 2005), while "breach [ ] and causation are questions of fact for the jury," *Eden W. ex rel. Evans v. Tarr*, 517 S.W.3d 691, 702 (Tenn. Ct. App. 2015).

Here, Plaintiffs fail to state a negligence claim against TVFCU based on its evaluation of their loan application, because they have not shown TVFCU owed them a duty "to honestly evaluate Plaintiffs' application for the loan on the Property." (Doc. 13, at 13.) Plaintiffs insist such a duty is owed but fail to cite any precedent or statute supporting this legal conclusion.[9] (*See* Doc. 19, at 19). The Sixth Circuit has recognized that "Tennessee common law generally does not impose fiduciary or similar duties on banks with respect to their customers, depositors, or borrowers absent special circumstances." *Power & Tel. Supply Co.*, 447 F.3d at 932 (citing *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn.1996)). The burden is therefore on Plaintiffs to "point to some special circumstance warranting imposition of a common law duty." *Harris v. Nationwide Mut. Fire Ins. Co.*, 367 F. Supp. 3d 768, 775 (M.D. Tenn. 2019). Plaintiffs have not done so here, and based on the facts of this case, there is nothing to suggest the existence of such special circumstances. Plaintiffs therefore fail to state a claim against TVFCU for negligence in evaluating their loan application.[10]

---

[9] Asserting unsupported legal conclusions is a trend in Plaintiffs' briefing. In their twenty-three--page response to Defendants' motions to dismiss, Plaintiffs cite a total of ten cases, none of which advances their arguments. (*See generally*, Doc. 18.) Four citations lay out the standard of law for a 12(b)(6) motion (*id.* at 6–7), two are cases cited by Brewer that Plaintiffs discuss in an attempt to distinguish, (*id.* at 12–13), and the remaining four are bare recitations of the elements of Plaintiffs' causes of action (*id.* at 7, 14, 19, 20). The Court is left to its own devices to guess at the basis for Plaintiffs' arguments. As the Sixth Circuit has explained, "[i]t is not enough for a party to 'mention a possible argument in the most skeletal way' and leave the court to 'put flesh on its bones.'" *Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). Indeed, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson*, 125 F.3d at 995.

[10] Plaintiffs make a cursory, one-line argument that because Defendants "violat[ed] the USPAP and NCUA guidelines . . . Defendants have committed negligence per se." (Doc. 18, at 19.) However, negligence per se requires, among other things, that a defendant violate a *statute*. *See*

Plaintiffs also allege that TVFCU was negligent because it "expel[led] [Hibbs] as a member without a vote and without explanation *in retaliation* for Ms. Edwards protesting the appraisal and denial of the loan." (Doc. 13, at 13 (emphasis added).) Plaintiffs state that in expelling Hibbs, TVFCU "failed to identify any 'for cause' reason for rejecting Mr. Hibbs, failed to explain whether there was a vote regarding the expulsion, and failed to give Mr. Hibbs a notice of a pending expulsion so that he could identify his rights regarding the same." (*Id.* at 8.)

There are numerous issues with Plaintiffs' argument that this expulsion constitutes "negligence." Most importantly, Plaintiffs allege TVFCU acted willfully, not negligently. (*See id.* at 13 (alleging that TVFCU wrongfully expelled Hibbs for the purpose of retaliating against him).) Negligence is a claim that a defendant was carelessness (an unintentional tort), not that a defendant willful acted with the purpose of harming another (an intentional tort). An intentional act cannot be negligent. *See* 57A Am. Jur. 2d Negligence § 29 ("Intent and negligence are mutually exclusive; intentional acts may not form the basis for a negligence claim."); *Lynn v. Burnette*, 531 S.E.2d 275, 279 (N.C. Ct. App. 2000) (discussing negligence principles and noting that "negligence ceases to play a part in the [tort] analysis where the injury is intentional") (internal citations and quotations omitted).

---

*Cook By & Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994) ("The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se."). The fact that a defendant has violated some sort of professional standard promulgated by a private entity, or has not conformed to industry best practices, is not enough to establish negligence per se. Defendants must have violated a law which was intended to protect a class of people including Plaintiffs. *Id.* Plaintiffs have not cited any such law. (*See generally*, Docs. 13, 18.)

Instead, it appears Plaintiffs are arguing that TVFCU intentionally breached some sort of contract or agreement that established the proper process for expelling a member. If that were the case, the appropriate cause of action would be breach of contract, not negligence or any other tort claim.[11] [12] *See Palmer v. Nationwide Mut. Ins. Co.*, 945 F.2d 1371, 1375 (6th Cir. 1991) ("[I]t is no tort to breach a contract, regardless of motive . . . when the promisee's injury consists merely of the loss of his bargain, no tort claim arises.") (citation and internal quotations omitted). Nor can Plaintiffs salvage their "negligence" claim by arguing that TVFCU negligently breached a contract, because there is no cause of action for negligent breach of contract under Tennessee law. *See Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 10 n.11 (Tenn. 2008), *overruled on other grounds by Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015) ("[W]e have never recognized a tort of 'negligent breach of contract.'"); *Harvey ex rel. Rose v. Wells Fargo Bank, N.A.*, No. 2:18-CV-173-DCLC-HBG, 2019 WL 13195302, at *2 (E.D. Tenn. Sept. 18, 2019) ("There is no cause of action for negligent breach of contract."). Plaintiffs therefore fail to state a negligence claim against TVFCU for the expulsion of Hibbs.[13]

---

[11] Plaintiffs' claim would also fail because they have not pled facts showing that Hibbs suffered an injury, and "an injury or loss" is an essential element of a negligence claim. *King*, 419 S.W.3d at 246. Plaintiffs simply allege that by expelling Hibbs "[TVFCU] . . . has proximately harmed Plaintiffs in an amount to be proven at trial." (Doc. 13, at 13.) This is a legal conclusion, unsupported by facts, that the Court is not bound to accept. *Iqbal*, 556 U.S. at 679. The only losses that Plaintiffs do identify and support with factual allegations are related to TVFCU denying their loan application, not Hibbs's expulsion. (Doc. 13, at 8.)

[12] Negligent infliction of emotional distress, or even intentional infliction of emotional distress, is also not sufficiently pled, because both torts require that a plaintiff allege facts showing that he suffered a "serious mental injury." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012). Plaintiffs have not done so.

[13] It is not appropriate for the Court to reshape Plaintiffs' negligence claim into a workable cause of action on their behalf. Even if the Court were to analyze this claim as a breach of contract, Plaintiffs have not pled enough facts about the agreement between Hibbs and TVFCU to allow for meaningful analysis.

Plaintiffs' negligence claim against Appraiser Defendants is similarly unclear. Plaintiffs assert that Appraiser Defendants "had a duty to Plaintiffs to appraise the Property honestly and under the Uniform Standards of Professional Appraisal Practice."[14] (Doc. 13, at 13.) They further claim that "[Defendants] breached this duty to Plaintiffs by relying upon a falsified appraisal, which they blatantly and deceptively refused to remedy, to deny Plaintiffs' loan application." (*Id.*) Given that Appraiser Defendants did not "rel[y] on" the appraisal, it is difficult to understand Plaintiffs' theory of negligence against them. However, taking the complaint as a whole, Plaintiffs' argument is that Appraiser Defendants carelessly reported the condition of the property to TVFCU, and this caused TVFCU to deny Plaintiffs' loan application. In essence, Plaintiffs allege that Appraiser Defendants made a negligent misrepresentation. This separate "negligence" claim is therefore duplicative of Plaintiffs' claim of negligent misrepresentation and will be dismissed for the same reasons stated above.

In sum, Plaintiffs have failed to allege facts showing that TVFCU owed them a duty in evaluating their loan application. Plaintiffs also fail to allege that TVFCU was negligent in expelling Hibbs without explanation. Furthermore, Plaintiffs' claim against Appraiser Defendants is duplicative of their negligent misrepresentation claim. Therefore, Plaintiffs' negligence claims will be dismissed.

G. **Conspiracy**

Lastly, Plaintiffs bring a claim for civil conspiracy. (Doc. 13, at 14.) Plaintiffs argue that Defendants conspired to "back date the Edwards Appraisal" and to use "[this] false and fraudulent appraisal of the Property" to evaluate Plaintiffs loan application. (*Id.*)

---

[14] Plaintiffs again fail to point to any law showing the existence of such a duty. (Doc. 18, at 19.)

In Tennessee, "[t]he elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). If what the parties conspired to do is not unlawful, and they do not use unlawful means to accomplish it, a conspiracy claim must fail. *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994) ("If [the underlying tort] claim fails, then the claim for conspiracy must also fail, for it cannot be that a conspiracy to do a thing is actionable where the thing itself would not be.") (citations and internal quotations omitted).

Here, Plaintiffs concede that a lender denying a loan, "is lawful." (Doc. 18, at 20.) However, Plaintiffs argue that "us[ing] an incorrect and regurgitated appraisal" to evaluate a loan application constitutes an unlawful means. (*Id.* at 22.) The question is therefore whether it is unlawful for a lender to use a one-month-old appraisal in evaluating a loan. *See Kincaid*, 221 S.W.3d at 38. Plaintiffs do not point to any statute or precedent suggesting it is illegal for a lender to use a one-month-old appraisal to evaluate a loan application.[15] (*See generally* Docs. 13, 18.) Curiously, Plaintiffs argue that, because there is not a law affirmatively stating that a lender may use an existing appraisal when evaluating a loan application, that act must be illegal. (*See* Doc. 18, at 9 ("There is not a single law that Plaintiffs' attorneys [could] find—and, clearly, based on Defendants' Motions, neither could they—stating that a credit union or any financial

---

[15] Plaintiffs argue that Appraiser Defendants violated the USPAP and agency guidance, but any such violation is not "illegal." (Doc. 18, at 20–21.) The USPAP is a code of conduct laid out by an industry group. It is not law. The guidance that Plaintiffs point to is also not law, nor does it forbid a lender from using a one-month-old appraisal in evaluating a loan application. (*See id.* (quoting Federal Deposit Insurance Corporation, *Frequently Asked Questions on the Appraisal Regulations and the Interagency Appraisal and Evaluation Guidelines*, (Oct. 16, 2018), https://www.occ.treas.gov/newsissuances/bulletins/2018/bulletin-2018-39a.pdf.).)

institution is allowed to accept a transfer of an appraisal from the appraiser directly.").)

Plaintiffs have it backwards—generally, unless a law forbids an activity, it is permissible to do.

It is not typically the function of the law to spell out every possible permissible activity.

Accordingly, Plaintiffs fail to state a claim for conspiracy because they have not alleged

that Defendants conspired to accomplish an unlawful act or that they used unlawful means.[16]

## IV. CONCLUSION

For the above reasons, Defendants' motions to dismiss (Docs. 14, 15, 16) are hereby

**GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' one remaining claim against

Appraiser Defendants is their TCPA claim. Plaintiffs' one remaining claim against TVFCU is

their TILA claim, but only to the extent it is based on TVFCU's failure to report Appraiser

Defendants.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[16] While Plaintiffs have stated a claim against Appraiser Defendants under the TCPA, Plaintiffs have pled no facts showing there was any agreement between Defendants to violate the statutes.